OPINION
{¶ 1} Plaintiff-appellant, William H. Grosz, appeals from the June 18, 2004 judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, overruling appellant's objections to the May 3, 2004 magistrate decision and approving said decision. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Appellant and defendant-appellee, Linda Lou Grosz, were married for 41 years. In an agreed judgment entry and decree of divorce filed on January 26, 2001, both appellant and appellee agreed that appellant would pay appellee spousal support in the amount of $2,800 per month. Appellant was also ordered and agreed to maintain a $150,000 life insurance policy for appellee's benefit. As part of the divorce, appellee was awarded a property settlement in the amount of $149,526.96 from the value of appellant's sole proprietorship, BG Engineering. Appellant agreed to make the payments in two installments.
 {¶ 3} Since September 2001, appellant stopped making spousal support payments. As of September 30, 2002, appellant was in arrears in the amount of $32,580. In May 2002, appellant stopped paying the premiums on the life insurance policy. Additionally, appellant also failed to pay the second installment on the property settlement. As of September 26, 2002, appellant owes appellee $92,835 plus interest for the second installment settlement regarding BG Engineering.
 {¶ 4} On December 6, 2001, appellant filed a motion for reduction of spousal support. Appellant argued that due to a decrease in his income, his support obligation should be reduced. Appellee filed various motions seeking an order for appellant to appear and show cause why he should not be held in contempt. Beginning on September 26, 2002, the parties' motions were heard before a magistrate.
 {¶ 5} On December 22, 2003, the magistrate concluded that appellant did not meet the statutory elements required to warrant a modification of his spousal support. Appellant's inability to pay was not due to a decrease in his income, but was due to a voluntary choice to use his business income in ways other than to pay his support obligation. The magistrate found appellant in contempt for his failure to pay spousal support, failure to pay the remainder of the property settlement and failure to hold a life insurance policy for appellee's benefit.
 {¶ 6} On May 3, 2004, appellant filed three objections to the magistrate's decision. On May 6, 2004, appellee filed a memorandum contra. On June 9, 2004, the trial court heard appellant's objections. The trial court, in agreeing with the magistrate, found that appellant did not prove a substantial decrease in his income. The trial court believed that appellant voluntarily spent his company income to maintain his current girlfriend's lifestyle. The trial court, in overruling appellant's objections, ordered appellant to remit spousal support arrearage at a rate of $500 a month, reinstate the life insurance policy for appellee's benefit, remit the remaining amount ($92,835) of the property settlement plus interest, and pay attorney fees in the amount of $23,071. It is from this entry that appellant appeals, setting forth the following three assignments of error:
First Assignment of Error:
Whether the Trial Court erred when it failed to find a change in circumstances warranting a modification of spousal support after the evidence established Mr. Grosz's gross income dropped from $13,764.00 per month to $3,572.00 per month in September 2001.
Second Assignment of Error:
Whether the Trial Court erred in finding Mr. Grosz in contempt when the evidence demonstrated he did not have the means to pay the ordered spousal support, maintain the life insurance policy and pay the property settlement of $92,835.00.
Third Assignment of Error:
Whether the Trial Court Erred in awarding $23,071.00 in attorney fees for contempt when these fees were at least in part for defense of Mr. Grosz's Motion for Modification of Spousal Support and thus subject to the means test of Ohio Revised Code section 3105.18 (H).
 {¶ 7} In his first assignment of error, appellant maintains that the trial court failed to find a substantial change in his income warranting a modification of spousal support. Appellant avers that his business records evidenced a dramatic change in the business gross income since September 11, 2001. Appellant argues that with a 74 percent decrease in his monthly gross income, there was no money available to pay his support obligation.
 {¶ 8} A trial court is generally afforded wide latitude in deciding spousal support issues. Bolinger v. Bolinger (1990), 49 Ohio St.3d 120;Cherry v. Cherry (1981), 66 Ohio St.2d 348. Where modification of a spousal support award is requested, the threshold question becomes whether the trial court retained jurisdiction to modify the provisions of its order and whether the circumstances of a party have changed. Wolding v.Wolding (1992), 82 Ohio App.3d 235, 239. In the present case, the trial court specifically retained jurisdiction to modify the provisions of the decree.
 {¶ 9} R.C. 3105.18(E) states that the trial court may modify the amount or terms of a spousal support order upon a determination that "the circumstances of either party have changed." A "change of circumstances" includes, but is not limited to "any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." See R.C. 3105.18(F). To warrant a modification, the change must be one that is substantial and not contemplated at the time of the prior order. Tremaine v. Tremaine (1996), 111 Ohio App.3d 703, 706. This court reviews the modification of spousal support under an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Absent an abuse of discretion, the trial court's judgment will be affirmed. Masters v. Masters (1994), 69 Ohio St.3d 83. When applying the abuse of discretion standard of review, an appellate court is not permitted to substitute its judgment for that of the trial court. In reJane Doe 1 (1991), 57 Ohio St.3d 135, citing Berk v. Matthews (1990),53 Ohio St.3d 161.
 {¶ 10} When modifying a spousal support order, the trial court engages in a twostep analysis. First, the trial court must determine whether there has been a change in circumstances of either party pursuant to R.C. 3105.18(E). As stated, in order to obtain a modification of spousal support, appellant must show a substantial change in circumstances. In order to justify modification of the spousal support award, this decrease or change in appellant's income must not have been voluntary. Melhorn v.Melhorn (Jan. 30, 1989), Montgomery App. No. 11139, citing Nash v. Nash
(1945), 77 Ohio App. 155.
 {¶ 11} Second, if there exists a change of circumstances, the trial court must determine whether spousal support is still necessary and, if so, in what amount. Kucmanic v. Kucmanic (1997), 119 Ohio App.3d 609,613; Bingham v. Bingham (1983), 9 Ohio App.3d 191. The trial court should set forth the basis for its decision with sufficient detail to allow proper appellate review. Graham v. Graham (1994),98 Ohio App.3d 396, 399-400.
 {¶ 12} In this case, appellant maintained that two things compelled him to file a motion to modify spousal support. First, appellant argues that due to a lack of work from his main client, General Electric ("GE"), in 2000 and early 2001, he had to file for Social Security benefits. Work from Ohio University ("OU"), his second client, also diminished. Second, after the events of September 11, 2001, all work stopped. (Vol. I, Tr. 5-6.)
 {¶ 13} Appellant presented a self-prepared balance sheet from 2002 evidencing his income and business expenses, an estimated budget for the remaining months in 2002, and computerized check ledgers from his personal Bank One account. Appellant kept and maintained his own records, expenses and monitored his monthly income.
 {¶ 14} The magistrate noted that the decline in appellant's net profits between 2001 and 2002 were similar to what appellant reported in 1998 and 1999. Gross profits in 1998 were $154,048 with a decrease to $61,636 in 1999. In 2001, appellant's gross profits were $148,353 with a significant decrease to $46,866 through September 2002. The magistrate noted that the similarities in profit decline in 1998/1999 and 2001/2002 does not support appellant's claim that the events of September 11, 2001 were to blame for the decline in gross income. 2001 was a productive year for gross revenues. The magistrate pointed out that during this time, appellant moved his business from Ohio to South Carolina. Appellant testified that he could not afford to live in the marital residence so he moved to South Carolina for two reasons: (1) for business opportunities; and (2) for his relationship with Anna Benson. (Tr. 19, 20.)
 {¶ 15} Appellant testified that the move to South Carolina reduced his business costs. (Tr. 20.) However, he incurred substantial travel expenses ($11,600) as a result of flying to Columbus every week to maintain customer contacts with GE and OU. Id. While living with Benson, appellant assisted her with personal living expenses such as rent, food and utilities, made repairs and improvements to her property and also paid monies to Benson for business expenses. In 2001, Benson later became appellant's office assistant. In addition to paying Benson's salary and commission, appellant transferred money from his business account to Benson in an amount totaling $59,097.53.
 {¶ 16} The trial court noted that appellant's testimony was not credible. Appellant provided the court with self-prepared financial information and documentation, which the trial court called into question. The trial court concluded that appellant transferred significant amounts of money used for living expenses from his corporation to provide a decrease in gross revenues. The trial court found that the dramatic decline in appellant's gross profits was not as a result of the events of September 11, 2001, but was a result of appellant's own voluntary actions. The trial court concluded that there was no change in circumstance that was not or should have been contemplated by appellant at the time he agreed in 2001 to pay $2,800 per month in spousal support. We find no abuse of discretion in these findings by the magistrate or the trial court. As such, appellant's first assignment of error lacks merit and is not well-taken.
 {¶ 17} In his second assignment of error, appellant argues that the trial court erred in finding him in contempt when appellant avers that he presented evidence to demonstrate that he was unable to pay spousal support, maintain the life insurance policy, and pay the remainder of the property settlement.
 {¶ 18} Nonpayment of spousal support is addressed in R.C. 2705.02 and may result in a finding of civil contempt. Beach v. Beach (1955),99 Ohio App. 428, 431. An appellate court will review a finding of contempt under an abuse of discretion standard. Dozer v. Dozer (1993),88 Ohio App.3d 296, 302. Establishing a prior court order and evidence of nonpayment according to its terms makes a prima facie case of civil contempt. Rossen v. Rossen (1964), 2 Ohio App.2d 381; Nielsen v.Meeker (1996), 112 Ohio App.3d 448. The burden then shifts to the party opposing the motion to establish a defense for nonpayment. Rossen, at 384.
 {¶ 19} On January 21, 2004, appellee filed an order for appellant to appear and show cause why he should not be held in contempt for failing to abide by the January 26, 2001 agreed judgment entry and divorce decree. At the hearing on appellant's motion to modify spousal support, appellant admitted that he stopped paying spousal support in September 2001 because he could no longer afford the obligation. (Tr. 81.) Appellant was ordered to pay $2,800 per month. In September 2001, appellant gave Benson $12,500. During October 2001, appellant transferred $10,250 to Benson. In November 2001, he paid Benson $3,113.76 for commissions and medical bills, and gave her $6,800 from his personal bank account. From September 2001 to November 2001, appellant gave Benson $32,663.76. From October 2001 to September 2002, appellant was in arrears in spousal support to appellee in the amount of $32,580.
 {¶ 20} Appellant also admitted that in May 2002, he ceased making the premium payments on the life insurance policy. (Tr. 79.) However, appellant admitted to maintaining a $30,000 policy with Penn Mutual Life Insurance Company in the name of The Ohio State University ("OSU"). (Tr. 80.) This policy gave appellant membership rights to the OSU Presidents Club thereby allowing appellant to purchase football and basketball tickets. Appellant admitted to purchasing football tickets. (Tr. 80-82.)
 {¶ 21} Additionally, appellant admitted not paying appellee for the remaining obligation of the property settlement. (Tr. 90.) Pursuant to the agreed judgment entry and divorce decree, appellant agreed to pay appellee the total sum of $149,526.96 for the property settlement. On or before February 1, 2001, appellant agreed to pay appellee $50,000 and, on or before February 1, 2002, appellant agreed to remit the remaining balance of $99,526.96 plus interest at ten percent per annum. On March 6, 2001, appellant paid appellee $15,053.03 and, on March 2, 2002, another payment of $7,898.85. As of September 26, 2002, appellant owes appellee $92,835 plus interest.
 {¶ 22} We conclude that the admissions made by appellant are sufficient to establish his arrearage and nonpayment pursuant to the trial court's order. Bacharowski v. Bacharowski (Sept. 11, 1997), Cuyahoga App. No. 71164; Evid.R. 801(D)(2). We, therefore, find that appellee presented sufficient evidence to demonstrate the spousal support and prior award arrearage in this matter, that appellant failed to establish a credible defense, and the trial court acted within its proper discretion in finding appellant in contempt. As such, appellant's second assignment of error lacks merit.
 {¶ 23} In his third and final assignment of error, appellant argues that the trial court erred in awarding $23,071 in attorney fees where appellant presented evidence of his inability to pay the attorney fees. The trial court noted that appellant's lack of cooperation in the discovery process forced appellee to expend additional amounts of money to obtain discovery documents. The trial court found that appellee accrued substantial amounts of attorney fees in defending against appellant's motion to modify spousal support, and in pursuing her motion for contempt.
 {¶ 24} The trial court has discretion to award attorney fees in contempt proceedings. Blum v. Blum (1967) 9 Ohio St.2d 92, syllabus; Randv. Rand (1985), 18 Ohio St.3d 356, 359; Wilder v. Wilder (Sept. 7, 1995), Franklin App. No. 94APE12-1810. There is also statutory support for the trial court's award of attorney fees. R.C. 3105.18(H) provides:
In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to * * * any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees * * * it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees.
 {¶ 25} An award of attorney fees pursuant to a contempt action in a divorce proceeding is governed under R.C. 3105.18(G), providing in pertinent part:
If any person * * * is found in contempt of court for failure to make alimony or spousal support payments * * *, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and shall require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt.
 {¶ 26} As stated in our resolution of appellant's first assignment of error, the trial court's decision in finding appellant in contempt for his failure to pay spousal support, failure to maintain the life insurance policy, and failure to pay the remainder of the property settlement did not constitute an abuse of discretion. Upon finding appellant in contempt, R.C. 3105.18(G) mandates that the trial court make an award of attorney fees in favor of appellee. As such, we find no abuse of discretion on the part of the trial court in determining that fees were awardable in this case.
 {¶ 27} Furthermore, an award of attorney fees may be predicated upon one party intentionally causing the other party to incur unnecessary, substantial fees or when one party is responsible for much of the litigation. Trott v. Trott (Mar. 14, 2002), Franklin App. No. 01AP-852. Accordingly, appellant's third assignment of error lacks merit and is not well-taken.
 {¶ 28} For the foregoing reasons, appellant's first, second, and third assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations is affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.