BURKART, Appellee,

v.

BURKART, Appellant, et al.

[Cite as *Burkart v. Burkart,* 173 Ohio App.3d 252, 2007-Ohio-3992.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–1169.

Decided Aug. 2, 2007.

Taft, Stettinius & Hollister L.L.P., Diane D. Reynolds, and Carl A. Murway, for appellee.

Tyack, Blackmore & Liston Co., L.P.A., and Thomas M. Tyack, for appellant.

FRENCH, Judge.

{¶ 1} Defendant-appellant, James I. Burkart, appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, where-

by the trial court sustained Civ.R. 53 objections that plaintiff-appellee, Gail P. Burkart, filed against a magistrate's decision on appellant's motion to modify spousal support and appellee's motion to find appellant in contempt for spousal-support arrearages.

{¶ 2} Appellant and appellee divorced pursuant to a January 3, 2002 "Agreed Judgment Entry Decree of Divorce." In the entry, the parties agreed that appellant would retain sole interest in his present business, James I. Burkart & Associates, Inc. (the "corporation") and his liquidated business, Irrigation Systems Co., Inc. The parties also agreed that appellant would relinquish to appellee his interest in the residential property, but appellant would retain his sole interest in the real property of his business.

{¶ 3} In addition, in the entry, appellant agreed to pay appellee $5,300 a month in spousal support. However, the agreed entry specified that the trial court "shall retain jurisdiction to modify this spousal support provision." (Emphasis sic.) Moreover, in an "Agreed Entry, Stipulated Findings of Fact, and Conclusions of Law," the parties agreed that appellant's annual earnings were approximately $190,000 and appellee's annual earnings were approximately $30,000.

{¶ 4} On November 1, 2002, appellant filed a motion to modify spousal support. In the motion, appellant claimed that he had, through no fault of his own, suffered a substantial decline in income in his business, making the $5,300 a month spousal-support order "no longer economically feasible or appropriate."

{¶ 5} On March 14, 2003, appellee filed a "Motion for Order to Show Cause and Citation in Contempt" against appellant. Appellee asserted that appellant had failed to pay the full amount of spousal support pursuant to the agreed entry of divorce.

{¶ 6} The trial court referred the parties' motions to a magistrate, and the magistrate held a hearing on the motions on June 22, 2004. At the hearing, appellant testified as follows. In 2002, the gross revenue for appellant's corporation started to decline due to loss of business. In 2003, for $385,000, appellant sold the building where his corporation was located. To help the corporation pay off debt, appellant loaned his business approximately $130,000 through the proceeds of the sale. That loan was offset by a $21,046 loan that the corporation made to appellant. Appellant had not received the balance of the loan he made to the corporation, but in 2003, appellant received from the corporation $33,000 in draws to shareholders in addition to his salary.

{¶ 7} Next, appellant testified as follows on cross-examination:

Q * * * [Y]ou reduced the payment to [appellee], you are supposed to pay her under the court order $5,300 a month?

A Right.

\* \* \*

Q \* \* \* You agree you reduced the $5,300 yourself?

A Yes.

Q And if I understand how you are paying it, you are paying $1,000 when you get paid?

A Every two weeks, correct.

Q So it's about $26,000 a year, because it's more than [$]2000 a month?

A Right, right, that's exactly right.

Q I did the math on this thing. If the Court finds that you shouldn't have reduced it, if you shouldn't, you are asking the Court, I'm trying to be fair here, you are asking the Court to give you retroactive relief?

A Right.

Q If they don't, if they say how much do you owe today, I say it's $55,434.41.

\* \* \*

Q Would you agree with that?

A It sounds about right.

{¶ 8} Appellee testified at the hearing that in 2002, before appellant reduced his spousal-support payments, appellee received $63,600 in spousal support. However, appellee testified that in 2003, she only received $25,455 in spousal support. Appellee also testified about her own income and fringe benefits through her partnership in a business.

{¶ 9} Appellant then submitted into evidence copies of appellant's personal income tax returns and of the corporation's income tax returns. In particular, appellant submitted a copy of his 2003 individual federal income tax return, which denoted appellant's wages, salaries, tips, etc., as $64,557. Appellant also submitted into evidence a copy of the corporation's 2003 federal tax return, which indicated that the corporation paid appellant a salary of $65,487 for 2003, and the tax return confirmed the $33,000 draw that appellant made from the corporation. In addition, the tax return denoted, after deductions, the corporation's ordinary income for 2003 as $5,336 from trade or business activities. Moreover, the corporation's 2003 federal tax return noted the corporation as having a balance of minus $49,123 at the beginning of 2003 and a balance of minus $81,294 at the end of 2003, and it further indicated gross receipts of $245,928. In comparison, the corporation's 2002 federal tax return specified gross receipts of $374,596, and the corporation's 2001 federal tax return specified gross receipts of $607,419. Lastly, the corporation's federal tax returns for 2001 and 2002 verified appellant as the corporation's sole shareholder.

{¶ 10} The parties also submitted into evidence for the magistrate's consideration a July 7, 2004 deposition of appellant's accountant, Steve Barnard. Barnard testified that in 2002, appellant's corporation converted to an S corporation, the profits or losses of which pass through to the shareholders dollar for dollar. Barnard also testified that appellant's $33,000 draw was not taxable income to appellant. In discussing the draw, Barnard then stated: "An example would be he could borrow—the company could borrow $40,000 and show no profit, and [appellant] could take out [$]33,000 as a draw." Later, at the deposition, Barnard clarified that appellant "would be permitted to take a salary and draws through the [S corporation]. Those draws are not subject to Social Security and Medicare on either side which saves [appellant] approximately 15 percent in taxes at the end of the year * * *. It is subject to federal income tax. It is subject to state income tax, but it is exempt from Social Security and Medicare" tax.

{¶ 11} On July 15, 2005, the magistrate granted appellant's motion to modify spousal support. In granting the motion to modify, the magistrate concluded that appellant was entitled to a reduction of spousal support, effective November 1, 2002, the date that appellant filed his motion. The magistrate noted that appellant's "earning capacity has been impacted by the economy and changes in his industry, and his current earning ability has, at least temporarily, been significantly reduced to * * * $80,262" annually. The magistrate then recognized that the trial court previously awarded appellee 33.47 percent of appellant's income, and the magistrate applied the same percentage to the $80,262. Thus, the magistrate modified appellant's spousal-support obligation to $26,863.69 per year, or $2,239 per month.

{¶ 12} In determining appellant's income, the magistrate did not include the $33,000 draw that appellant made from the corporation. The magistrate stated:

[Appellant] did not report receipt of $33,000 on his 2003 1040 and denies receiving this additional sum of money. The Magistrate cannot determine where these funds, if received as additional income to him, were passed through for tax purposes to him. [The corporation] reported having a -49,123 loss at the beginning of 2003 and -$81,294 loss at the end of 2003, reflecting a difference of almost the $33,000 in question. The Magistrate cannot understand how [appellant] could have taken $33,000 from the business, when it had a significantly negative cash flow from the start of the year. Furthermore, as [appellant's] accountant suggests, [appellant] may have received these monies as the repayment of loans * * * he made to the [corporation]. * * * [H]owever, the Magistrate cannot determine how these loans are accounted for in the [corporation's] financial documents provided. If the $33,000 represents repayment of a loan, then it clearly is not income to [appellant]. * * * Given the nature of the evidence presented, the $33,000 was not proven to be income.

{¶ 13} Next, the magistrate denied appellee's motion to find appellant in contempt for spousal-support arrearages. The magistrate concluded:

Since * * * January 3, 2002, [appellant] has been ordered to pay spousal support to [appellee] in the amount of $5,300 per month, plus processing charges. In 2003, [appellant] reduced his spousal support payment to [appellee] to $1,000 every other week (per his pay periods). While [appellant], who is self-employed, imposed some self-help, to his credit, he continued to pay [appellee] the $1,000 per pay.

[Appellant's] spousal support obligation is reduced to $2,239 per month effective 11/1/02. With the limited evidence presented and no payment printout from the Franklin County Child Support Enforcement Agency, [appellee] has not established what [appellant] has paid or may owe at this time. [Appellant] overpaid for the last two months of 2002, and by paying $1,000 every other week since January of 2003, [appellant] has underpaid at the rate of $72.33 per month. ($2,239 - $2,166.67 = $72.33). The Magistrate finds, therefore, that [appellant] is in substantial compliance with this court's modified order for spousal support and may have even overpaid.

{¶ 14} Thereafter, appellee filed objections to the magistrate's decision pursuant to Civ.R. 53. Appellee objected to the magistrate's decision not to include the $33,000 draw as appellant's income and not to find that appellant owed spousal-support arrearages.

{¶ 15} On October 24, 2006, the trial court sustained, in part, appellee's objections. First, the trial court sustained appellee's objection concerning the $33,000 draw. The trial court noted:

Within her decision, the Magistrate expressed some confusion as to the nature of a $33,000 sum that was distributed by [the corporation] in 2003, as [appellant] did not report the same amount of money on his 2003 tax documents. After an analysis of the testimony, the Magistrate deemed the $33,000 to be "cash flow" to [appellant] potentially due to loan repayment from [the corporation] to [appellant]. She did not consider the amount to be income to [appellant]. However, after a review of the record, the Court cannot come to the same conclusion.

Based on the deposition of [appellant's] accountant, Steve Barnard, the $33,000 that the Magistrate considered as loan repayment from [the corporation] to [appellant] was, in reality, a cash draw made by [appellant] against [the corporation]. * * * Due to the nature of a Subchapter S Corporation, [appellant] is able to take draws against [the corporation] without the funds being subject to Social Security or Medicare tax. * * * This recognized accounting practice saved [appellant] approximately 15% in taxes. * * * Therefore, while this amount of money is not evidenced as income on [appellant's] 2003 personal

income tax return, Mr. Barnard verified that [appellant] received this amount in addition to his salary. * * *

The court finds that the $33,000 in question was cash available to [appellant] as a result of the draw taken against [the corporation]. Had he not taken the sum as a draw, [appellant] as the sole shareholder of [the corporation], still would have enjoyed the $33,000 as passive income with the only difference being that the passive income *is* subject to Social Security and Medicare taxes. Accordingly, the Court finds it appropriate to consider the $33,000 as gross income to [appellant] in 2003.

(Emphasis sic.)

{¶ 16} Thus, the trial court included the $33,000 draw as income to appellant. In doing so, the trial court stated: "Whether [appellant] takes a cash draw in this amount or leaves it as [the corporation's] ordinary income after expenses are paid, the Court finds that [appellant] will continue to enjoy this amount of cash flow based on [the corporation's] gross receipts and expenses as presented to the Court." Ultimately, the trial court found appellant's annual income to be $131,565.64, upon including, in part, the $33,000 draw. Based on these figures, the court modified appellant's spousal support to $3,530 per month.

{¶ 17} Next, the trial court sustained, in part, appellee's objection concerning the magistrate's decision not to find that appellant owed spousal-support arrearages. The trial court concluded:

Since [appellant's] motion for a modification was found to be well taken, the Court agrees that [appellee's] Motion for Contempt was properly denied. [Appellee] is, however, entitled to collect the arrearage of spousal support that has accrued over the course of these proceedings. Accordingly, [appellee's] * * * objection is found to be **well taken in part** and the same is hereby **SUSTAINED in part**.

[Appellant] continued to pay the original $5,300 of agreed spousal support to [appellee] in November and December of 2002. Based on the effective date of the instant modification, [appellant] will receive credit for his overpayment of $3,540 for those two months. Since he admits to paying only $1,000 every other week (or $2,166.66 per month) from January of 2003 to July of 2005, an arrearage exists for those thirty-one months in the amount of $42,263.54. Further, the Court assumes that [appellant] has been paying the modified support amount of $2,239 since August of 2005. The instant Judgment Entry thus creates an additional arrearage for the last fifteen months (including October of 2006) of approximately $19,365. Therefore, [appellant's] spousal support arrearage totals approximately $58,088.54. [Appellant] is hereby

**ORDERED** to pay an additional $700.77 per month in liquidation until said arrearage is satisfied.

(Emphasis sic.)

{¶ 18} Appellant appeals, raising two assignments of error:

Assignment of Error No. I:

The trial court erred in ruling that the $33,000.00 withdrawal made from the defendant's corporation by defendant was to be considered an income item for calculating an appropriate level of spousal support.

Assignment of Error No. II:

The trial court erred in granting judgment on an arrearage where no evidence presented as to the amount of payments made from the time of the initial hearing before the magistrate in June, 2004 to the time of the judgment entry in October, 2006.

■ {¶ 19} Appellant's first assignment of error concerns the trial court calculating its modified spousal-support order by considering as appellant's income the $33,000 draw that appellant made from the corporation in 2003. As noted above, the trial court did so after sustaining appellee's Civ.R. 53 objection to the magistrate's decision, which did not consider the draw as income. Appellant argues that we must reverse the trial court's modification of the magistrate's decision in regard to the $33,000 draw. We agree.

{¶ 20} We will not disturb a trial court's decision to adopt, reject, or modify a magistrate's decision absent an abuse of discretion. *Wade v. Wade* (1996), 113 Ohio App.3d 414, 419, 680 N.E.2d 1305; *Knox v. Knox*, Gallia App. No. 03CA13, 2004-Ohio-428, 2004 WL 193860, at ¶ 8. Similarly, we will not disturb a trial court's determination on domestic relation matters, such as spousal support, absent an abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. Thus, we also review under an abuse-of-discretion standard a trial court's modification of spousal support. *Grosz v. Grosz*, Franklin App. No. 04AP–716, 2005-Ohio-985, 2005 WL 534901, at ¶ 9. "Abuse of discretion" connotes more than an error of law or judgment; it implies an unreasonable, arbitrary, or unconscionable decision. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

■ {¶ 21} R.C. 3105.18(E) states that the trial court may modify the amount or terms of a spousal-support order upon a determination that "the circumstances of either party have changed." A "change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F). The burden of showing that a modification in spousal support is warranted is on the party who seeks it. *Georgenson v. Georgenson*, Franklin App. No. 03AP–390,

2003-Ohio-7163, 2003 WL 23024538, at ¶ 11; *Joseph v. Joseph* (1997), 122 Ohio App.3d 734, 736, 702 N.E.2d 949; *Tremaine v. Tremaine* (1996), 111 Ohio App.3d 703, 706, 676 N.E.2d 1249. Here, pursuant to R.C. 3105.18, the trial court noted appellant's decreased income from the $190,000 at the time of the parties' divorce to $131,565.64, a figure that the trial court calculated upon including the above $33,000 draw.

{¶ 22} In examining the trial court's inclusion of the $33,000 draw, we first note that appellant is the sole shareholder of his corporation. As such, appellant has unlimited control over the distribution of the corporation's profits and assets. See *Bowen v. Thomas* (1995), 102 Ohio App.3d 196, 201, 656 N.E.2d 1328. Therefore, in regard to support orders, " 'a court should pay particular attention to the possibility that a spouse who is the sole shareholder of a business is engaged in "creative accounting" designed to cloak net income.' " *Offenberg v. Offenberg*, Cuyahoga App. No. 78885, 2003-Ohio-269, 2003 WL 152814, at ¶ 30, quoting *Corrigan v. Corrigan* (May 13, 1999), Cuyahoga App. No. 74088, 1999 WL 304523. Here, the trial court appeared mindful of the above admonition when it stated:

> The Court finds that the $33,000 in question was cash available to [appellant] as a result of the draw taken against [the corporation]. Had he not taken the sum as a draw, [appellant] as the sole shareholder of [the corporation], still would have enjoyed the $33,000 as passive income with the only difference being that the passive income *is* subject to Social Security and Medicare taxes.

(Emphasis sic.)

{¶ 23} Thus, the trial court computed the $33,000 draw into appellant's income and concluded that appellant will continue to enjoy an "amount of cash flow" through such draws "based on [the corporation's] gross receipts." However, the record is devoid of evidence establishing the premise of the $33,000 draw. As an example, the record does not establish whether the draw came from the corporation's gross receipts via proceeds the corporation received from customers or, as appellant asserts on appeal, whether the draw merely constituted a withdrawal of some of the funds that appellant had loaned to the corporation. In recognizing appellant's assertion concerning the loan, we acknowledge the evidence in the record indicating that appellant did loan the corporation money after selling the corporation's building. Contra, *Zimmer v. Basil* (Jan. 30, 1995), Butler App. No. CA94–02–050, 1995 WL 31586 (upholding a trial court's child support order that stemmed from a referee's recommendation to include as income loan repayments to a parent who was the sole shareholder of a company after the referee concluded that the loan repayments were actually " 'a source of revenue to [the parent] no different than if he was hired by a separate corporation in which he held no interest, except he would have to pay taxes' "). Likewise, we recognize

appellant's assertion that the trial court's calculating the $33,000 draw as his income resulted in double counting because the draw constituted repayment of appellant's loan to the corporation, and the loan was funded by proceeds appellant obtained from selling the corporation's property, an asset he received during the distribution of property at the time of the divorce. See, e.g., *Office v. Office* (Jan. 17, 1997), Montgomery App. No. 15298, 1997 WL 18043 (noting that in calculating a spousal-support order for an ex-wife, the trial court erred by including as income to the ex-husband money that the trial court also included in the property distribution to the parties).

{¶ 24} In the final analysis, given the record before us, we conclude that the premise of the $33,000 draw can only be based on conjecture. Therefore, the trial court had no proper basis to include the $33,000 draw as appellant's income when recalculating the spousal-support order upon modifying the magistrate's decision on the draw. See *Youngerman v. Meijer, Inc.* (Sept. 20, 1996), Montgomery App. No. 15732, 1996 WL 531628 (emphasizing that courts do not indulge in speculation).

{¶ 25} In so concluding, we recognize appellee's contention that we need not disturb the trial court's decision concerning the $33,000 draw because appellant's first "assignment of error contests only one finding, not necessarily one that the Trial Court relied upon when it modified the Magistrate's Decision" and because "[t]he amount by which the Trial Court reduced [appellant's] support obligation was based upon a review of all relevant statutory factors." We reject appellee's contentions, and we conclude that because the trial court specifically included the draw in its spousal-support calculations, a reversal and remand on the matter is warranted to ensure that the trial court is not awarding appellee more spousal support than it would have awarded in the absence of conjecture concerning the $33,000 draw. See *Office* (reversing a trial court's spousal- and child-support order and remanding the matter to the trial court upon concluding that "the trial court may have awarded * * * more support than it would have awarded in absence of the error").

{¶ 26} Thus, based on the above, we conclude that the trial court abused its discretion in including the $33,000 draw as income to appellant when modifying its spousal-support order, and, in accordance with *Office,* we remand the matter to the trial court. In so remanding, we recognize that under Civ.R. 53(D)(4)(b), a trial court may "take additional evidence" in reviewing a magistrate's decision. Cf. Civ.R. 53(D)(4)(d) (stating that before ruling on a party's objections to a magistrate's decision, "the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate"). Accordingly, we sustain appellant's first assignment of error.

{¶ 27} In his second assignment of error, appellant contends that we must reverse the trial court's October 2006 decision to calculate appellant's spousal-support arrearages at $58,088.54 upon modifying the magistrate's decision on appellee's contempt motion. We agree.

{¶ 28} Again, we apply an abuse-of-discretion standard of review to the trial court's decision to modify the magistrate's findings. *Wade,* 113 Ohio App.3d at 419, 680 N.E.2d 1305; *Knox,* 2004-Ohio-428, 2004 WL 193860, at ¶ 8. As noted above, at the June 2004 hearing, appellant testified that, at some time after the divorce, he stopped paying appellee the required $5,300 per month in spousal support and only paid appellee spousal support of $1,000 every other week. Appellee's testimony established that it was at the beginning of 2003 that appellant started paying the $1,000 every other week. However, the record is devoid of evidence as to what appellant paid in spousal support after the June 2004 hearing and up to the trial court's October 2006 decision. In this regard, nothing in the record supports the trial court's conclusion that appellant admitted to paying $1,000 every other week to July 2005, which is the date of the magistrate's decision. Moreover, given the above, nothing in the record supports the trial court's decision to "[assume] that [appellant] has been paying the modified support * * * since August of 2005." Accordingly, the trial court had no basis beyond conjecture to find appellant in arrears for spousal support for the time period after the June 2004 hearing. A resolution of the conjecture is warranted to ensure that the trial court is not awarding appellee more spousal-support arrearages than it would have awarded in the absence of the conjecture. See *Office; Youngerman.* Accordingly, we conclude that the trial court abused its discretion when it calculated appellant's spousal-support arrearages upon modifying the magistrate's decision on appellee's contempt motion. Thus, we remand the matter for the trial court's further consideration under the dictates of Civ.R. 53.

{¶ 29} In so concluding, we reject appellee's contention that we need not disturb the trial court's decision on appellant's spousal-support arrearages because appellant failed to inform the trial court of when or if he began paying the proper amount of spousal support. Appellee's contention does not alleviate the problem of the trial court calculating arrearages based on conjecture, and we emphasize that the trial court had means of resolving the conjecture under Civ.R. 53(D)(4)(b) by taking additional evidence in reviewing the magistrate's decision. Moreover, our ruling on appellant's first assignment of error will require the trial court to recalculate spousal-support arrearages if the trial court concludes that it needs to modify its October 2006 spousal-support order. Therefore, based on the above, we sustain appellant's second assignment of error.

{¶ 30} In summary, we sustain appellant's first and second assignments of error. Therefore, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and we remand this cause to that court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

SADLER, P.J., and KLATT, J., concur.