BURKART, Appellee and Cross–Appellant,

v.

BURKART, Appellant and Cross–Appellee.

[Cite as *Burkart v. Burkart*, 191 Ohio App.3d 169, 2010-Ohio-5363.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–314

Decided Nov. 4, 2010.

170

Gail P. Burkart, pro se.

Tyack, Blackmore & Liston Co., L.P.A., and Thomas M. Tyack, for appellant.

KLATT, Judge.

{¶ 1} Defendant-appellant, James I. Burkart, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that modified the amount of monthly spousal support that he owes to plaintiff-appellee, Gail P. Burkart. Gail cross-appeals from the same judgment, and she also appeals the judgment denying her March 9, 2009 motion to compel. Because the trial court lacked jurisdiction to decide James's motion for modification, we vacate the judgment granting that motion. We reverse the judgment denying Gail's motion to compel.

{¶ 2} The trial court granted the parties a divorce in an agreed judgment entry decree of divorce filed January 3, 2002. The divorce decree stated:

Commencing January 1, 2002, [James] shall pay, as and for spousal support, the sum of $5,300.00 per month * * *. The Court *shall* retain jurisdiction to modify this spousal support provision.

(Emphasis sic.) Within ten months of the entry of the divorce decree, James moved for a modification of his spousal-support obligation. James asked the trial court to reduce the amount that he owed in spousal support because the income he received through his landscape architectural business had "substantially declined given the nature of the economy, especially after September 11, 2001."

{¶ 3} A magistrate conducted an evidentiary hearing on James's motion on June 22, 2004. Over a year later, the magistrate issued her decision. First, the

magistrate found that James's income had dropped significantly since the parties' divorce. According to the magistrate, James had earned approximately $190,000 in 2001, but in 2003 he had earned only $80,263. Second, the magistrate found that Gail had not presented sufficient evidence to prove that James's decline in income was contemplated at the time of the divorce. Third, after considering the R.C. 3105.18(C)(1) factors, the magistrate concluded that a decrease in the amount of spousal support to $2,239 per month was reasonable and appropriate.

{¶ 4} Gail objected to the magistrate's decision. In an October 24, 2006 judgment entry, the trial court sustained some of Gail's objections and overruled others. The trial court held that the magistrate had erred in calculating James's 2003 income. The trial court found that in 2003, James had taken a $33,000 shareholder's draw from James Burkart Associates, Inc. ("JBA"), the S corporation through which James operated his landscape architectural business. The trial court characterized the $33,000 withdrawal as gross income, and it added that amount to the wages and benefits that James received from JBA to arrive at James's 2003 income. Combining James's gross wages, estimated yearly benefits, profit from JBA, and the $33,000 withdrawal from JBA, the trial court concluded that James's 2003 income totaled $131,565.64.

{¶ 5} Although the trial court's calculation of James's 2003 income exceeded the magistrate's calculation, the trial court concurred with the magistrate's determination that James had suffered a substantial decline in income. Additionally, the trial court deemed credible James's testimony that he did not foresee the decline in income at the time of the divorce. Finally, after considering the amount of each party's income and the parties' relative earning abilities, the trial court modified the spousal-support award to $3,530 per month.

{¶ 6} James appealed the trial court's judgment to this court, and he argued that the trial court erred in attributing the $33,000 withdrawal to him as income. *Burkart v. Burkart,* 173 Ohio App.3d 252, 2007-Ohio-3992, 878 N.E.2d 41. James contended that the $33,000 withdrawal was not income but a partial repayment of a loan that James had previously extended to JBA. We concluded that the trial court abused its discretion when it assumed that the $33,000 withdrawal came from JBA's gross receipts via proceeds JBA had received from customers. Id. at ¶ 24–25. Because conjecture is an improper basis on which to compute a party's income, we remanded the matter "to ensure that the trial court [was] not awarding [Gail] more spousal support than it would have awarded in the absence of conjecture concerning the $33,000 draw." Id. at ¶ 25.

{¶ 7} Upon remand, Gail filed a motion for contempt, asserting that James was in contempt of court for failing to pay her the full amount of spousal support set in the divorce decree. As Gail pointed out in this March 9, 2009 motion, James had admitted to unilaterally reducing the amount of the spousal-support pay-

ments to approximately $2,000 per month beginning in January 2003.[1] Gail requested that the trial court find James in contempt for underpaying; she also asked the court to set the amount of the arrearage that James owed. Additionally, Gail sought interest on the arrearage and an award of her costs and expenses in defending against the motion for modification.

{¶ 8} On September 1, 2009, the trial court conducted a hearing on the issues raised by the remand and Gail's motion for contempt. Both James and Gail presented evidence during that hearing. On March 9, 2010, the trial court issued a judgment that reconsidered Gail's objections to the magistrate's decision and ruled on Gail's contempt motion. In deciding the objections, the trial court relied on evidence of the parties' incomes in 2006, 2007, and 2008, instead of the 2001, 2002, and 2003 income figures that formed the basis of the October 24, 2006 judgment. Using the more recent yearly incomes, the trial court set James's spousal-support obligation at $3,120.38 per month.

{¶ 9} With regard to Gail's motion in contempt, the trial court concluded that it lacked a valid basis on which to find James in contempt of court. Thus, the trial court denied the motion. The trial court did not address the existence or amount of any arrearage, and it did not rule on Gail's request for costs and expenses.

{¶ 10} Both James and Gail now appeal from the trial court's March 9, 2010 judgment. James assigns the following errors:

[1] The trial court erred in setting the level of spousal support effective November 1, 2002 based upon the court's averaging determination of defendant's income for the years 2006, 2007, and 2008.

[2] The trial court erred in setting the level of spousal support by applying the percentage of the original support order as representing the defendant's 2003 income without considering or addressing the criteria mandated in Ohio Revised Code § 3105.18(C)(1).

{¶ 11} On cross-appeal, Gail assigns the following errors:

1. The trial court erred by not ruling on whether it had jurisdiction to consider cross appellee's motion to modify spousal support. The trial court had no such jurisdiction. *Mandelbaum v. Mandelbaum* (2009), 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172.

---

1. During the September 1, 2009 hearing, James testified that he had paid at least $2,239 a month in spousal support since the issuance of the magistrate's decision. James's attorney stated that at the time of the September 1, 2009 hearing, James was paying spousal support in the amount of $31,317 per year, or $2,609.75 per month. Regardless of whether James remitted $2,239 or $2,609.75 per month, neither figure matched the $5,300 in spousal support that the original divorce decree ordered James to pay.

2. The trial court erred by failing to specifically determine cross appellee's 2003 income and make specific findings as to how the court arrived at said determination especially with respect to a $33,000.00 payment cross appellee received in that year.

3. The trial court erred by failing to rule on issues of arrearages, judgment on arrearages, statutory interest and costs even though cross appellant raised these matters by properly filed motions.

{¶ 12} Because Gail's first cross-assignment of error challenges the trial court's jurisdiction to modify the spousal-support award, we will consider it first. By her first cross-assignment of error, Gail argues that the trial court lacked jurisdiction because James failed to establish that an unforeseen, substantial change in circumstances had occurred. We agree.

{¶ 13} Pursuant to R.C. 3105.18(E):

[I]f a continuing order for periodic payments of money as spousal support is entered in a divorce or dissolution of marriage action that is determined on or after January 1, 1991, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the * * * spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:

(1) In the case of a divorce, the decree * * * contains a provision specifically authorizing the court to modify the amount or terms of * * * spousal support.

(2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of * * * spousal support.

Interpreting this provision, the Supreme Court of Ohio has held that a trial court lacks jurisdiction to modify a prior order of spousal support unless (1) the decree of the court expressly reserved jurisdiction to make a modification, (2) the court finds that a substantial change in circumstances has occurred, and (3) the court finds that the change was not contemplated at the time of the original decree. *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, paragraph two of the syllabus. If these three jurisdictional prerequisites are met, then a court must determine whether spousal support is still necessary and, if so, in what amount. *Sweeney v. Sweeney*, 10th Dist. No. 06AP–251, 2006-Ohio-6988, 2006 WL 3825251, ¶ 23; *Grosz v. Grosz*, 10th Dist. No. 04AP–716, 2005-Ohio-985, 2005 WL 534901, ¶ 11; *Georgenson v. Georgenson*, 10th Dist. No. 03AP–390, 2003-Ohio-7163, 2003 WL 23024538, ¶ 11.

{¶ 14} The party who seeks a modification of spousal support bears the burden of showing that a modification is warranted. *Burkart*, 173 Ohio App.3d

252, 2007-Ohio-3992, 878 N.E.2d 41, at ¶ 21; *Friesen v. Friesen,* 10th Dist. No. 07AP–110, 2008-Ohio-952, 2008 WL 603191, ¶ 38; *Sweeney* at ¶ 23; *Georgenson* at ¶ 11. This evidentiary burden is double-pronged. *Joseph v. Joseph* (1997), 122 Ohio App.3d 734, 736–737, 702 N.E.2d 949. First, the moving party must present evidence proving the jurisdictional prerequisites—the reservation of continuing jurisdiction in the decree and the existence of a substantial change in circumstances not anticipated at the time of the divorce. *Peters v. Peters,* 12th Dist. No. CA2009–04–037, 2009-Ohio-5929, 2009 WL 3723008, ¶ 15; *Carlisle v. Carlisle,* 180 Ohio App.3d 569, 2009-Ohio-215, 906 N.E.2d 483, ¶ 10; *Eckstein v. Eckstein,* 9th Dist. No. 03CA0048–M, 2004-Ohio-724, 2004 WL 299032, ¶ 22. Second, the moving party must adduce evidence demonstrating that the existing award of spousal support is no longer appropriate and reasonable. *Churchia v. Churchia,* 11th Dist. No. 2008–G–2846, 2009-Ohio-1486, 2009 WL 819252, ¶ 13; *Eckstein* at ¶ 22.

{¶ 15} Generally, appellate courts afford trial courts wide latitude in deciding spousal-support issues. *Sweeney* at ¶ 22; *Georgenson* at ¶ 12. Appellate courts thus review the modification of spousal support under an abuse-of-discretion standard. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028; *Wilder v. Wilder,* 10th Dist. No. 08AP–669, 2009-Ohio-755, 2009 WL 418771, ¶ 10; *Grosz* at ¶ 9. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 16} In the case at bar, Gail acknowledges that the divorce decree specifically authorized the trial court to modify the spousal-support award. Consequently, Gail concedes that James satisfied the first jurisdictional prerequisite. Gail, however, contends that James failed to present evidence establishing the two other jurisdictional prerequisites.

{¶ 17} First, Gail challenges the magnitude of the change in circumstances that James experienced. Gail contends that a "correct" calculation of James's 2003 income would reveal that James's income did not substantially decline between 2001 and 2003. According to Gail, a "correct" calculation would include the $33,000 withdrawal from JBA that James made in 2003. In its October 24, 2006 judgment, the trial court added the $33,000 withdrawal to James's 2003 income and computed his annual income at $131,565.64. Thus, even under the income calculation Gail espouses, James's 2003 income dropped by approximately one-third when compared to his $190,000 income in 2001.

{¶ 18} "[I]n order to merit any adjustment, the change in the parties' economic situation must be of such a degree as to be described as 'drastic.' "

*Mottice v. Mottice* (1997), 118 Ohio App.3d 731, 734, 693 N.E.2d 1179. Here, when a party's income declined by one-third in the period since the divorce, the trial court acted well within its discretion in concluding that a drastic change in circumstances had occurred.

{¶ 19} In addition to being substantial, the change in circumstances also must be unforeseen. *Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, at paragraph two of the syllabus. Gail argues that James failed to present any evidence demonstrating that he did not contemplate a substantial drop in his income at the time of the divorce.

{¶ 20} In its October 24, 2006 judgment, the trial court addressed Gail's contention that "by filing his Motion to Modify Spousal Support on November 1, 2002, only ten months after the Decree of Divorce was journalized, [James's] alleged change in circumstances was foreseeable at the time of the divorce and, thus, does not warrant modification." The trial court rejected this argument, finding credible James's testimony that a substantial decline in income was unforeseeable at the time of the divorce. However, James never testified that he did not anticipate a substantial drop in income in late 2001 (when he agreed to the terms of the divorce decree) or early 2002 (when the trial court journalized the divorce decree). In fact, James testified that in late 2001, he perceived a downturn in the landscape architectural business. James foresaw that this downturn would lead to a decline in his income, and he raised this issue prior to the entry of the divorce decree. During direct examination, James and his attorney engaged in the following colloquy:

Q: Jim, I want to go back then, and I want to touch on some of this. This is a decline of several hundred [thousand] dollars in terms of gross revenues from 2001 to 2002. What happened?

A: Well, this was brought up at the original divorce trial. I tried to tell everybody that business was starting to slow down, we were at the time very fortunate we were working on several large projects of very lucrative projects for Ohio University which was for their football field. We had Easton Town Center going on, and several other nice large projects. Even prior to the divorce settlement we were starting to see a big slack, especially in the commercial market. And then when 9/11 hit, that absolutely stopped most things. As the economy dropped, and everybody is aware the economy dropped, as it got bad in certain areas, and unfortunately they were my areas, what I really found out was that a lot of other landscape architects, engineers, which are all my competition, are obviously trying to go after the same projects. So where I would go in and interview and have one or two competitors there to compete with, we find we were getting 20 or 30 competi-

tors coming from around the United States. And projects I was sure I was going to get, I was losing them.

{¶ 21} On cross-examination, Gail's attorney elicited the following testimony:

Q: And if I understand what you testified to [earlier,] * * * you brought it up at the original divorce that there was going to be this decline in your income, and those were concerns that you raised at the time of this agreement, is that correct?

A: I believe that's correct.

{¶ 22} James, as the moving party, bore the burden of proving that he did not contemplate a substantial decline in his income at the time of the divorce. James did not meet this burden. The record is devoid of any evidence indicating that in late 2001 and early 2002, James was unaware that his income would soon substantially decrease. Moreover, James's testimony suggests that he actually anticipated earning less in the future. Given the state of the record, we conclude that the trial court abused its discretion in finding that the evidence established an unforeseen, substantial change in circumstances. The trial court, therefore, lacked the jurisdiction to modify the spousal-support award.

{¶ 23} In arguing to the contrary, James maintains that this court should not apply *Mandelbaum* retroactively. In *Mandelbaum,* the Supreme Court of Ohio addressed whether a trial court could modify spousal support without a finding that a substantial change in circumstances had occurred that was not contemplated at the time of the original decree. The court held that a trial court lacks the jurisdiction to modify a spousal-support award absent such a finding. *Mandelbaum,* 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, at paragraph two of the syllabus. While *Mandelbaum* marked the first occasion that the Supreme Court of Ohio addressed this issue, this court has long held that modification of a spousal-support order requires a finding of a substantial change in circumstances that was not contemplated at the time of the order. See id. at ¶ 17, quoting *Leighner v. Leighner* (1986), 33 Ohio App.3d 214, 215, 515 N.E.2d 625. In this case, therefore, the resolution of the jurisdictional issue does not require a retroactive application of the law.

{¶ 24} Our conclusion that the trial court lacked jurisdiction to modify the original spousal-support order renders the trial court's judgment on James's motion void. Given the lengthy history of this litigation, we regret having to reach this result. However, subject-matter jurisdiction is a condition precedent to a court's ability to hear a case. *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 75, 701 N.E.2d 1002. See also *Cheap Escape Co., Inc. v. Haddox, L.L.C.,* 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 6 (" 'Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its

merits' and 'defines the competency of a court to render a valid judgment in a particular action'"). If a court acts without jurisdiction, then any judgment by that court is void. *Jones* at 75. An appellate court cannot allow a judgment rendered in the absence of jurisdiction to stand merely for the sake of convenience or efficiency. *Morrison v. Allstate Indemn.* Co. (C.A.11, 2000), 228 F.3d 1255, 1261 (holding that subject-matter jurisdiction cannot be "supplanted by considerations of convenience and efficiency"); *Laughlin v. Kmart Corp.* (C.A.10, 1995), 50 F.3d 871, 874 (holding that "'subject matter jurisdiction is not a matter of equity or of conscience or of efficiency,' but is a matter of the 'lack of judicial *power* to decide a controversy'" [emphasis sic]).

{¶ 25} Moreover, Gail's failure to challenge the trial court's jurisdiction in the prior appeal does not alter the outcome of this appeal. "'Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time.'" *Rosen v. Celebrezze,* 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 45, quoting *Pratts v. Hurley,* 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11. See also *Jones* at 75, 701 N.E.2d 1002 (holding that "[a] jurisdictional defect cannot be waived" and that "the lack of jurisdiction can be raised at any time"); *State ex rel. Wilson–Simmons v. Lake Cty. Sheriff's Dept.* (1998), 82 Ohio St.3d 37, 40, 693 N.E.2d 789 ("the issue of subject-matter jurisdiction cannot be waived and therefore can be raised at any time during the proceedings"); *In re Palmer* (1984), 12 Ohio St.3d 194, 196, 12 OBR 259, 465 N.E.2d 1312 ("In questions of subject-matter jurisdiction a theory of waiver cannot be invoked even where the jurisdictional issue was not raised in a timely fashion"); *Cohen v. Karavasales* (1960), 171 Ohio St. 46, 47, 12 O.O.2d 55, 167 N.E.2d 768 ("The fatal question of jurisdiction of the subject matter is, of course, one that may be raised initially at any time in any court * * *"); *In re Koellner* (1954), 160 Ohio St. 504, 507, 52 O.O. 379, 117 N.E.2d 169 ("Where a court has no jurisdiction of the subject matter of a case, the question of its jurisdiction may properly be raised at any stage * * *"). Consequently, even when a party waits until a second appeal to challenge the trial court's subject-matter jurisdiction, an appellate court cannot rely on the waiver doctrine to avoid consideration of the jurisdictional question. See *Morning View Care Ctr.-Fulton v. Ohio Dept. of Job & Family Servs.,* 10th Dist. No. 04AP–57, 2004-Ohio-6073, 2004 WL 2591237, ¶ 8 (concluding that a party's failure to raise the issue of subject-matter jurisdiction in a previous appeal did not preclude the party from raising the issue in the subsequent appeal); *Hopson v. DaimlerChrysler Corp.* (C.A.6, 2005), 157 Fed.Appx. 813, 817 (same). Because "a trial court's ability to revisit a spousal support award is a jurisdictional issue not subject to waiver," we must determine whether the trial court possessed subject-matter jurisdiction over this matter, regardless of Gail's

untimely assertion of the issue. *Ballas v. Ballas,* 7th Dist. No. 08 MA 166, 2009-Ohio-4965, 2009 WL 3003982, ¶ 35.

{¶ 26} We conclude that because James failed to adduce any evidence proving that he did not anticipate the substantial decline in his income, the trial court lacked jurisdiction to modify the original spousal-support award. Accordingly, we sustain Gail's first cross-assignment of error.

{¶ 27} Given our ruling on Gail's first cross-assignment of error, we need not address James's assignments of error or Gail's second cross-assignment of error. These three assignments of error challenge the merits of the trial court's decision, and our conclusion that the trial court lacked jurisdiction renders moot all arguments going to the merits. Accordingly, we overrule James's two assignments of error and Gail's second cross-assignment of error.

{¶ 28} By Gail's third cross-assignment of error, she argues that the trial court erred in failing to (1) determine the amount of James's arrearage and (2) rule on her request for interest on the arrearage and her court costs and expenses. As we stated above, Gail's March 9, 2009 motion for contempt asked the trial court to specify the amount of James's arrearage given his failure to pay the full $5,300 in monthly spousal support as required by the divorce decree. Additionally, Gail sought an award of interest on the arrearage and the costs of defending against the motion for modification.

{¶ 29} In response to this assignment of error, James contends that the trial court neither heard nor ruled on Gail's March 9, 2009 motion. James is wrong. At the September 1, 2009 hearing, the parties argued the March 9, 2009 motion for contempt and submitted evidence regarding the amount of monthly spousal support that James had previously paid. In its March 9, 2010 judgment, the trial court denied Gail's motion for contempt. However, the trial court did not refer to or rule upon Gail's request that it set an arrearage amount and award her interest and costs.

{¶ 30} If a trial court fails to rule on a request for relief contained in a motion, an appellate court will presume that the trial court denied the requested relief. *Swinehart v. Swinehart,* 5th Dist. No. 06–COA–020, 2007-Ohio-6174, 2007 WL 4105634, ¶ 26 (presuming an implicit denial of a party's request for attorney and expert fees contained within a motion for relief from judgment based on the trial court's silence on the issue). See also *State ex rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (holding that an appellate court ordinarily presumes that a trial court overruled a motion when the trial court fails to explicitly rule on the motion). Consequently, a trial court's failure to rule on request for relief contained in a motion is not, ordinarily, a reason for reversal. *Vahdati'bana v. Scott R. Roberts & Assoc. Co., L.P.A.,* 10th Dist. No. 07AP–581,

2008-Ohio-1219, 2008 WL 713936, ¶ 14 ("the failure to rule on the motion is not, by itself, a basis for us to reverse the trial court's judgment"). As the trial court's failure to rule cannot constitute error, we will instead construe Gail's cross-assignment of error as an attack on the trial court's implicit denial of her request for a determination of the arrearage and an award of interest and costs.

{¶ 31} At the time the trial court decided Gail's motion for contempt, it had just reduced James's spousal-support obligation to $3,120.38 per month, and it made that reduction retroactive to November 1, 2002 (the date James filed his motion for modification). According to the evidence adduced at the two evidentiary hearings, the amounts James actually paid in monthly spousal support between November 1, 2002, and March 9, 2009 (the date Gail filed her contempt motion), varied. For the first year after the divorce, James paid $5,300 per month, as directed by the original divorce decree. James unilaterally reduced the spousal-support payment to $2,000 per month in January 2003, and he remitted that amount each month until July 15, 2005 (the date the magistrate rendered her decision). Then, from July 15, 2005, James paid at least $2,239 per month (and perhaps as high as $2,609.75 per month). Comparing these actual payment figures to the $3,120.38 monthly payment ordered by the trial court, we cannot escape the conclusion that James owed an arrearage. Therefore, we find that the trial court erred in denying Gail's request that it determine the amount of James's arrearage.

{¶ 32} Although Gail states that she is clearly entitled to a judgment for interest on the arrearage amount and costs, she presents no argument explaining why she is entitled to that relief. The appellant, not the appellate court, must construct the legal arguments in support of an appeal. *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, ¶ 94. " 'An appellate court need not guess at undeveloped claims on appeal.' " *Kuper v. Halbach*, 10th Dist. No. 09AP–899, 2010-Ohio-3020, 2010 WL 2638520, ¶ 86, quoting *Allen v. Allen*, 10th Dist. No. 04AP–1341, 2005-Ohio-5993, 2005 WL 3009238, ¶ 27. With no argument to consider, we must conclude that the trial court did not err in denying Gail interest and costs. Accordingly, we sustain Gail's third cross-assignment of error to the extent that it posits error in the trial court's refusal to calculate James's arrearage, but we overrule Gail's third cross-assignment of error to the extent that it claims error in the trial court's refusal to award Gail interest and costs.

{¶ 33} For the foregoing reasons, we sustain Gail's first cross-assignment of error, overrule as moot Gail's second cross-assignment of error and James's two assignments of error, and sustain in part and overrule in part Gail's third cross-assignment of error. We reverse the portion of the trial court's judgment denying Gail's motion for contempt, and we vacate that portion of the trial court's

judgment ruling on James's motion for modification. We remand this matter to the Franklin County Court of Common Pleas, Division of Domestic Relations, so that it can set the amount of James's spousal-support arrearage.

Judgment reversed in part
and vacated in part,
and cause remanded.

BRYANT and McGRATH, JJ., concur.