OPINION
{¶ 1} Plaintiff-appellant, Timothy H. Friesen, appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, which overruled his Civ.R. 53 objections to the magistrate's order. For the reasons that follow, we reverse the trial court's judgment and remand for further proceedings.
 {¶ 2} Plaintiff and defendant-appellee, Danise Kaye Justice (fka Friesen), were married in 1971 and were divorced pursuant to a February 25, 2000 "Agreed Judgment *Page 2 
Entry Decree of Divorce." Two children were born out of the marriage; both were emancipated at the time of the divorce.
 {¶ 3} As pertinent here, the divorce decree awarded plaintiff and defendant an accrued benefit of 50 percent of plaintiff's Central States Southeast and Southwest Areas Pension Fund, to be valued as of January 12, 2000, and ordered plaintiff's counsel to prepare appropriate documentation to effectuate a Qualified Domestic Relations Order ("QDRO")[1] to that effect. For reasons not clear from the record, the QDRO was not journalized until April 10, 2006.
 {¶ 4} The divorce decree also ordered plaintiff to pay 50 percent of defendant's COBRA premium and to pay spousal support of $1,869 per month plus poundage until defendant's death, remarriage, or cohabitation with a member of the opposite sex. The court retained jurisdiction to modify the amount or terms of the spousal support award.
 {¶ 5} On December 27, 2005, defendant moved the court for an order requiring plaintiff to show cause why he should not be punished for contempt for his alleged nonpayment of spousal support and defendant's share of plaintiff's retirement benefits under the QDRO. In the same motion, defendant requested the court order plaintiff to pay her attorney fees incurred in the contempt action.
 {¶ 6} On January 20, 2006, plaintiff filed a motion seeking a reduction in his $1,869 per month spousal support obligation. Plaintiff argued that, due to his recent *Page 3 
retirement, his spousal support obligation "fair [sic] exceed[ed]" the retirement income he currently received. To that end, plaintiff attached his own affidavit averring that his current gross monthly income was $1,800.
 {¶ 7} On February 6, 2006, defendant filed a motion requesting that the court order plaintiff to pay her attorney fees incurred in opposing plaintiff's motion for reduction of spousal support.
 {¶ 8} The trial court referred the parties' motions to a magistrate, who held a hearing on May 16, 2006. At the time of the hearing, defendant was 57 years old. She testified as follows. From May 6, 2005 through May 16, 2006, she received approximately $70 in spousal support from plaintiff. During that period, she relied on a friend to pay her utilities, medical bills, and medications. Defendant received $152 a month in food stamps and obtained food from a local food pantry. She did not pay her $600 per month rent for one year. She sold her car for $6,500 and used the proceeds to pay medical bills.
 {¶ 9} At some point after the divorce, she lost her medical insurance because plaintiff failed to pay his portion of the COBRA premium; as a result, she accrued "[t]ens of thousands" of dollars in unpaid medical bills. (Tr. 14.) Approximately one week prior to the hearing she received a lump sum payment of $6,000 from plaintiff's retirement fund, representing the cumulative monthly payment she would have received since plaintiff's retirement had the QDRO been timely processed. Defendant used that money to pay some of her rent arrearages, to reimburse her friend, and to pay her attorney $500 to prosecute the contempt motion. Defendant is uninsurable because she has had cancer three times, has had open heart surgery, and has suffered a stroke. In addition, she is *Page 4 
unemployable because she cannot stand or walk for more than four or five minutes at a time. At the time of the hearing, she had not worked for approximately ten years, but occasionally provides child care for her one-year-old grandchild.
 {¶ 10} Defendant submitted into evidence certified copies of an account summary from the Franklin County Child Support Enforcement Agency ("FCCSEA") delineating spousal support disbursements totaling $71.74 since May 6, 2005. According to the account summary, plaintiff's spousal support arrearages totaled $22,704.80 as of May 15, 2006.
 {¶ 11} Upon examination by the magistrate, defendant testified that the home she was awarded in the divorce decree was foreclosed upon due to plaintiff's failure to pay the mortgage obligation prior to the entry of the final decree of divorce. Consequently, defendant received no proceeds from the sale. She is entitled to a monthly benefit of $604 from plaintiff's retirement fund; however, she opted for the lesser monthly survivorship benefit of $538. As of the date of the hearing, defendant had yet to receive a monthly benefit payment. As a result of the lump sum QDRO payment, she is no longer eligible for food stamps; she may apply again in three months, but does not know how the monthly retirement benefit will affect her eligibility. She applied for Social Security retirement benefits and is awaiting a determination of her eligibility; she was informed a decision would be forthcoming in four to six months.
 {¶ 12} Plaintiff testified at the hearing as follows. On June 1, 2005, he retired at age 61 after 32 years of Teamster employment; the last 24 were spent as a tractor-trailer driver for Wonder Bread. He was eligible for retirement after 30 years with the Teamsters with no concomitant minimum retirement age. His monthly retirement benefit is $1,840. *Page 5 
 {¶ 13} According to plaintiff, his decision to retire was precipitated, in part, by harassment and pressure from his employer designed to coerce him, an older employee with significant service time, "to either quit, retire, make a mistake and get fired, whatever it might be." (Tr. 43.) By way of example, plaintiff averred he was "written up" several times for minor infractions he was unaware he had committed. (Tr. 44.) As a result, he saw the "handwriting on the wall" and retired. (Tr. 44.)
 {¶ 14} Plaintiff further testified that his employer's bankruptcy filing factored heavily into his decision to retire. To that end, plaintiff stated that:
 * * * [I]f the company goes bankrupt before my retirement time, before I actually go, there is going to be a problem, a financial problem with how much I will get per month.
 * * *
 [In addition,] Central State's, * * * the retirement fund, has made [downward] adjustments in the amount of money that they pay retirees. * * *
 * * * [T]here was one adjustment made before I retired. I went ahead and retired. There's been another one since that time. So, in other words, * * * had I stayed working [I would have] been making even less on my retirement than I am now. * * *
(Tr. 45-46.) According to plaintiff, the first downward adjustment was $25 per month; the second was "maybe $150" per month. (Tr. 47.) Plaintiff further testified that the employer's financial future was so unstable that, at times, he was not sure whether checks issued by the company would be honored. Plaintiff testified that, given these circumstances, he concluded that "with 32 years in the Teamsters, the time has come to go, I retired. I don't see how it's even a problem." (Tr. 47.) *Page 6 
 {¶ 15} Plaintiff also testified that his retirement was motivated, in part, by the fact that he has suffered from back pain for the last ten years arising from his employment as a truck driver. He further testified that he receives routine chiropractic care to alleviate his back pain.
 {¶ 16} Plaintiff further testified that he is prohibited by the Teamsters union from obtaining post-retirement employment as a truck driver. He has, however, supplemented his retirement income with a variety of part-time employment. For example, in the two months preceding the hearing, he subcontracted as a collection agent for the Columbus Dispatch; although his expenses currently outweigh his earnings, he hopes the situation will improve in the future. In addition, he earned approximately $200 transporting vehicles for his brother-in-law. He has also worked as an usher for the Columbus Blue Jackets, earning $6.50 per hour for approximately eight hours work per week during the hockey season. He further testified he has applied for Social Security retirement benefits; his $1,340 monthly benefit is set to commence in late September 2006.
 {¶ 17} Upon examination by the magistrate, plaintiff testified that his gross income for the 12 months preceding his retirement was $46,000. He was unaware his share of defendant's COBRA premiums had stopped; he assumed the payments were extracted from his payroll check. He further testified that he paid neither healthcare nor pension premiums while he was employed, as both were fully paid by his employer. As of the hearing date, he had healthcare insurance through his wife's employer; however, this coverage was set to terminate in June 2006. He inquired about purchasing healthcare insurance through the Teamsters union; however, preliminary indications suggest that he will not qualify for coverage. He further testified that, due to his retirement, he is no longer *Page 7 
required to pay Teamsters union dues of $53 per month and has minimal transportation expenses.
 {¶ 18} On July 14, 2006, the magistrate denied plaintiff's motion to modify his spousal support obligation. Specifically, the magistrate found that plaintiff had failed to meet his burden of proving by a preponderance of the evidence that he is entitled to a reduction in spousal support. In so finding, the magistrate determined that "[although it was reasonable for him to do so under the circumstances that he described, Plaintiff voluntarily retired from his long time employment as a driver for Wonder Bread." (Emphasis sic.) (Mag. Dec, 6.) The magistrate further found that, although plaintiff supplemented his retirement and Social Security income with earnings from part-time employment, he was not fully employed and thus had potential income; however, he failed to present evidence of his actual earning ability. The magistrate also noted that plaintiff had failed to establish the extent to which he benefitted financially from his remarriage.
 {¶ 19} The magistrate further found that defendant is in "dire need" of continued spousal support and had "barely scrap[ed] by" since the spousal support payments stopped in May 2005. (Id. at 6-7.) The magistrate further found that defendant's total monthly income, including spousal support and pension payment, would be $2,407.
 {¶ 20} The magistrate concluded that "[u]nder the totality of the circumstances * * * [I] reject Plaintiff's contention that he has the right to basically be fully retired at the age of 61. The parties were married for 28 years and Plaintiff's spousal support obligation was imposed only a little more than six years ago. While it is conceivable that Plaintiff is *Page 8 
entitled to some reduction in his spousal support, under the evidence presented [I am] unable to determine the extent to which that might be true." (Mag. Dec, 7.)
 {¶ 21} Next, the magistrate granted defendant's motion to find plaintiff in contempt for spousal support arrearages. The magistrate found that plaintiff had failed to make any spousal support payments for approximately one year and had failed to establish any defense to the contempt that arose from that fact. Accordingly, the magistrate found plaintiff in contempt and sentenced him to ten days in jail, suspended on the condition that he immediately resume payments on his ongoing spousal support obligation and pay an additional $150 per month, plus processing fee, to liquidate the $22,704.80 arrearage.
 {¶ 22} Finally, the magistrate granted defendant's motion for attorney fees incurred in filing and prosecuting the contempt motion. The magistrate awarded defendant $500 and ordered plaintiff to pay that obligation within 30 days.
 {¶ 23} Thereafter, plaintiff filed objections to the magistrate's decision pursuant to Civ.R. 53. In essence, plaintiff argued that the magistrate erred in: (1) failing to find a change of circumstances sufficient to warrant a reduction in spousal support; (2) finding plaintiff in contempt of court for failure to pay spousal support; and (3) awarding attorney fees to defendant. Defendant did not file a response.
 {¶ 24} On July 12, 2007, the trial court overruled plaintiff's objections and adopted the magistrate's decision as an order of the court. As to the first objection, the court acknowledged plaintiff's argument that his spousal support obligation should be reduced because his retirement caused his monthly income to decrease from $3,900 per month to $1,840 per month. In addition, the court specifically noted plaintiff's challenge to the *Page 9 
magistrate's findings that he voluntarily retired from employment and that he was not entitled to retire at the age of 61.
 {¶ 25} To that end, the trial court noted that plaintiff's testimony established that his 32 years as a Teamster qualified him to retire and that three factors convinced him to do so — continued harassment from his employer, his employer's financial instability while in bankruptcy receivership, and his declining health. The court further noted, however, that plaintiff did not testify that he was required to retire.
 {¶ 26} The court then averred that, although it was not required to do so, it had reviewed all the factors set forth in R.C. 3105.18(C)(1)(a) through (n) regarding spousal support awards and made specific findings as to those that had changed since the parties divorce. Under R.C.3105.18(C)(1)(a) and (d), the income of the parties and the retirement benefits of the parties, respectively, the court found that plaintiff received $1,840 per month from his pension, $1,340 per month in Social Security retirement benefits, and earned, through odd jobs, "a few hundred dollars per month, depending on the season." (Judgment Entry, 3.) The court further found defendant received $538 per month in retirement benefits from plaintiff's pension which would continue if plaintiff predeceased her.
 {¶ 27} Under R.C. 3105.18(C)(1)(b), the relative earning abilities of the parties, the court found that, although plaintiff could not return to work as a Teamster truck driver, he had been able to find a variety of odd jobs and, while not highly skilled, had some job qualifications. The court further found that, as a Social Security recipient, plaintiff could earn up to $12,000 per year without affecting his eligibility for benefits. The court also found defendant was unable to work due to health problems. *Page 10 
 {¶ 28} Under R.C. 3105.18(C)(1)(c), the ages and the physical, mental, and emotional conditions of the parties, the trial court noted that plaintiff, age 62, is treated by a chiropractor for back pain resulting from his years as a truck driver. Defendant, age 57, has a history of poor health and is unable to stand or walk for more than a few minutes at a time.
 {¶ 29} Under R.C. 3105.18(C)(i), the relative assets and liabilities of the parties, the court noted that plaintiff offered no testimony as to his assets and liabilities. The court found that defendant had no personal assets. In support of this finding, the court cited defendant's testimony that she received all her furniture as gifts, sold her car to pay medical bills, lost her house to foreclosure due to plaintiff's failure to pay the mortgage, and has tens of thousands of dollars in outstanding medical bills.
 {¶ 30} Finally, under R.C. 3105.18(C)(1)(n), any other factor the court expressly finds to be relevant and equitable, the court noted that plaintiff had not offered testimony about increases or decreases in his living expenses since his retirement, but had testified that he and his wife had recently taken three vacations. The court further noted that, in contrast, defendant had no income from the time plaintiff stopped paying spousal support in May 2005 until the QDRO for the pension fund was processed in April 2006, and that she relied on friends, charity, and her landlord to sustain her during that period. The court further noted defendant lost her COBRA coverage due to plaintiff's failure to contribute his share of the premium and now claimed she is uninsurable.
 {¶ 31} Following consideration of the R.C. 3105.18 factors, the court determined that plaintiff's testimony regarding his working conditions demonstrated that it was reasonable for him to retire; the court nonetheless determined that plaintiff's retirement *Page 11 
was voluntary, rendering his decrease in income voluntary. The court found that, since the divorce decree had been entered only six years earlier, plaintiffs retirement should have been contemplated at that time. Accordingly, the court found that plaintiff failed to establish a change in his circumstances sufficient to warrant a reduction in spousal support.
 {¶ 32} In addition, the court found that defendant's circumstances had not changed since the divorce decree was finalized. The court determined that defendant needed the spousal support, had no means of earning income, and had significant medical expenses related to her poor health and lack of health insurance. The court further found that defendant's current receipt of retirement benefits was contemplated at the time of the divorce.
 {¶ 33} Regarding plaintiff's second objection, the court noted that records from the FCCSEA supported defendant's testimony that plaintiff had paid only $70 in spousal support from May 2005 to the date of the hearing, and that plaintiff neither contradicted the showing of contempt nor provided an affirmative defense.
 {¶ 34} As to plaintiff's third objection, the court found that R.C.3105.18(G) mandates the payment of reasonable attorney fees incurred in prosecuting spousal support contempt actions and that defendant testified that her attorney charged her $500 to prosecute her contempt motion. The court found that amount to be reasonable and to be related to plaintiff's act of contempt.
 {¶ 35} Plaintiff now appeals the trial court's judgment, asserting three assignments of error: *Page 12 
 1. The lower court abused its discretion by failing to find a change of circumstance sufficient to warrant a reduction in spousal support.
 2. The lower court's decision to hold Plaintiff-Appellant in contempt was arbitrary, unconscious [sic], unreasonable, and motivated by bias.
 3. The lower court's order granting attorney's fees to Defendant-Appellee was arbitrary, unconscious [sic], unreasonable, and motivated by bias.
 {¶ 36} Plaintiff's first assignment of error contends the trial court abused its discretion in failing to find a change of circumstances sufficient to warrant a reduction in his spousal support obligation. A reviewing court may not disturb a trial court's decision to adopt, reject or modify a magistrate's decision absent an abuse of discretion.Burkart v. Burkart, Franklin App. No. 06AP-1169, 2007-Ohio-3992, at ¶ 20, citing Wade v. Wade (1996), 113 Ohio App.3d 414, 419. Similarly, a reviewing court may not disturb a trial court's determination regarding domestic relations matters, such as spousal support, absent an abuse of discretion. Id., citing Booth v. Booth (1989), 44 Ohio St.3d 142, 144. Accordingly, a reviewing court must also review a trial court's decision regarding modification of spousal support for an abuse of discretion. Id., citing Grosz v. Grosz, Franklin App. No. 04AP-716, 2005-Ohio-985, at ¶ 9. An abuse of discretion means more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable decision. Id., citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 37} When a party requests modification of a spousal support award, the threshold question is whether the trial court retained jurisdiction to modify the provisions of its order and whether the circumstances of either party have changed. Faulkner v. Faulkner (Nov. 21, 2000), Franklin App. No. 00AP-473, citing Wolding v. Wolding (1992), *Page 13 82 Ohio App.3d 235, 239. As noted, in the present case, the trial court expressly retained jurisdiction to modify the spousal support award.
 {¶ 38} R.C. 3105.18(E) provides that the court may modify the amount or terms of a spousal support order upon a determination that "the circumstances of either party have changed." A "change in the circumstances" includes, but is not limited to "any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." See R.C. 3105.18(F). The burden of proving that a modification in spousal support is warranted is on the party who seeks it. Georgenson v. Georgenson, Franklin App. No. 03AP-390, 2003-Ohio-7163, at ¶ 11, citing Joseph v. Joseph (1997),122 Ohio App.3d 734, 736; Tremaine v. Tremaine (1996), 111 Ohio App.3d 703,706.
 {¶ 39} A change in circumstances justifying a modification of spousal support must be material, not brought about purposely by the moving party, and not contemplated at the time of the prior order.Georgenson, at ¶ 11, citing Kucmanic v. Kucmanic (1997),119 Ohio App.3d 609, 613. If the trial court finds a change in circumstances, the court must then determine whether spousal support is still necessary and, if so, in what amount. Id. The trial court must set forth the basis for its decision with sufficient detail to allow proper appellate review. Id. at ¶ 12, citing Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 96;Graham v. Graham (1994), 98 Ohio App.3d 396, 399-400.
 {¶ 40} Plaintiff contends the trial court abused its discretion in finding that he voluntarily retired from his former employment, and, thus, voluntarily decreased his income, particularly given the court's finding that plaintiff's decision to retire was reasonable under the circumstances. Plaintiff maintains that this mistaken finding *Page 14 
resulted in the erroneous conclusion that his retirement did not constitute a material change in circumstances pursuant to R.C.3105.18(F)
 {¶ 41} Many Ohio appellate courts have concluded that retirement may constitute a material change in circumstances justifying a modification of spousal support, especially where the party does not retire early.Zahn v. Zahn, Summit App. No. 21541, 2003-Ohio-6124, at ¶ 19, citingReed v. Reed (Feb. 16, 2001), Montgomery App. No. 2000 CA 81;Trotter v. Trotter, Allen App. No. 1-2000-86, 2001-Ohio-2122. See, also,Robinson v. Robinson (Apr. 4, 1994), Butler App. No. CA93-02-027, where the court stated that the obligor's voluntary retirement "does not bar consideration of [the obligor's] decrease in income when determining if there was a substantial change of circumstances. * * * [The obligor] merely took advantage of benefits he was entitled to receive." Accordingly, the court permitted the obligor's voluntary retirement to justify a decrease in his spousal support obligation.
 {¶ 42} Even an early retirement can be considered an involuntary decrease in a party's wages when that party demonstrates that it was economically sound to take an early retirement. See Roach v. Roach
(1989), 61 Ohio App.3d 315, 319; Tissue v. Tissue, Cuyahoga App. No. 83708, 2004-Ohio-5968, at ¶ 21; Melhorn v. Melhorn (Jan. 30, 1989), Montgomery App. No. 11139 ("[a] change in income due to retirement reasonably in advance of the expected date of retirement does provide a basis for modification of [spousal support] if it was not done in an attempt to avoid a court-ordered obligation to an ex-spouse"). See, also, Koch v. Koch, Medina App. No. 03CA0111-M, 2004-Ohio-7192. However, if a party retires with the intent of defeating the spousal support obligation, the *Page 15 
retirement is considered "voluntary underemployment," and the party's pre-retirement income is attributed to that party. Id. at ¶ 21.
 {¶ 43} Here, the record demonstrates that plaintiff did not take an early retirement; he was fully eligible for retirement due to his 32-year affiliation with the Teamsters. Thus, plaintiff was under no obligation to continue working after he was eligible to retire.Young v. Young. (Apr. 10, 1987), Lucas App. No. L86-298. Plaintiff merely took advantage of retirement benefits to which he was entitled. See Robinson, supra.
 {¶ 44} Further, as noted, plaintiff testified his retirement was brought about by the confluence of three factors — harassment and pressure from his employer, the financial instability of his employer, and physical problems arising from his years as a truck driver. Regarding the first factor, plaintiff's testimony suggests his belief that, if he did not retire, his employer would manufacture a reason to terminate him. Indeed, as noted, plaintiff averred he was "written up" several times for minor infractions he was unaware he had committed; accordingly, he saw the "handwriting on the wall" and opted to retire rather than be terminated.
 {¶ 45} As to the second factor, plaintiff expressed concern that his retirement income would be compromised due to the employer being placed in receivership. Indeed, he averred that the employer had already made two downward adjustments to his retirement income. Under these circumstances, it became financially prudent for plaintiff to retire. As to the third factor, he testified that his physical condition forced him to seek ongoing chiropractic treatment.
 {¶ 46} The trial court apparently credited plaintiff's unrefuted testimony about his reasons for retiring; however, the trial court nonetheless found that plaintiff's retirement *Page 16 
amounted to a voluntary decrease in income. However, the court made no determination as to whether plaintiff's intent in retiring was to defeat his spousal support obligation. Unless plaintiff retired simply to avoid or decrease his spousal support obligation, plaintiff's retirement should not be considered a voluntary decrease in income. Zahn, supra. Since the trial court does not appear to have examined the evidence with an eye to whether plaintiff's intent in retiring was to avoid his support obligation, we will remand this matter to the trial court for such consideration. If the trial court determines that plaintiff did not retire with the intent to defeat his support obligation, given the trial court's finding that his decision to retire was reasonable under the circumstances, the trial court should treat plaintiff's retirement as a change of circumstances justifying a modification of spousal support.
 {¶ 47} We further note that, in concluding that defendant's circumstances had not changed since the entry of the divorce decree, the trial court does not appear to have considered the fact that defendant has applied for, and is entitled to, Social Security retirement benefits. In considering the income of the parties and the retirement benefits of the parties under R.C. 3105.18(C)(1)(a) and (d), respectively, the court considered both plaintiff's pension and Social Security retirement benefits. In contrast, the court considered only defendant's pension benefits; it did not consider her probable receipt of the Social Security retirement benefits to which she is entitled. Defendant testified she had applied for such benefits and was awaiting a decision as to her eligibility. As the 28-year spouse of a Social Security contributor, defendant's interest or right to Social Security retirement benefits vested under plaintiff's account. Social Security retirement benefits are an asset to be considered in determining a spousal support award. Lindsay *Page 17 v. Curtis (1996), 115 Ohio App.3d 742, 746, citing Beyer v. Beyer
(1979), 64 Ohio App.2d 280, 284. The divorce decree made no mention of Social Security retirement benefits; thus, it is apparent that the benefits were a new occurrence. Accordingly, the trial court abused its discretion in failing to consider whether defendant's probable receipt of Social Security retirement benefits constituted a substantial change of circumstances justifying a modification of spousal support.
 {¶ 48} If, upon consideration of the foregoing, the trial court finds a change of circumstances, the court must then determine whether spousal support is still necessary, and, if so, in what amount.Georgenson, supra. We further note that the trial court has discretion to make any order of modification retroactive to the date plaintiff filed his motion for modification. Bowen v. Bowen (1999),132 Ohio App.3d 616, 640. The first assignment of error is well-taken.
 {¶ 49} In his second assignment of error, plaintiff argues that the trial court erred in finding him in contempt for failing to pay his spousal support obligation. Plaintiff concedes he did not pay spousal support after he retired in May 2005; however, he argues the contempt finding is unreasonable, given that his income declined from $3,900 per month to $1,840 per month following his retirement. We disagree.
 {¶ 50} One who fails to comply with a lawful court order may be punished for contempt of court. Harrison v. Harrison (Apr. 15, 1999), Franklin App. No. 98AP-560, citing R.C. 2507.02(A). Pursuant to R.C.2705.031(B), a spousal support obligee may initiate contempt proceedings against the obligor for failure to pay, and, pursuant to R.C.2705.031(E), the trial court has jurisdiction to make a finding of contempt for non-payment of support and to impose the penalties provided in R.C. 2705.05. Id. A civil contempt *Page 18 
finding must be supported by clear and convincing evidence. Id., citingBrown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253. A reviewing court may not reverse a trial court's contempt finding absent an abuse of discretion. Id., citing State v. Moody (1996), 116 Ohio App.3d 176,181, citing State ex rel. Delco Moraine Div., Gen. Motors Corp. v.Indus. Comm. (1990), 48 Ohio St.3d 43, 44.
 {¶ 51} The evidence offered at the hearing clearly and convincingly supports the trial court's finding of contempt. Plaintiff knew he was under a court order to pay defendant $1,869 per month in spousal support and concedes that he did not pay that obligation after he retired in May 2005. He did not file his motion to reduce spousal support until January 2006. Defendant testified that she received approximately $70 in spousal support from the time plaintiff retired in May 2005 to the time of the hearing in May 2006. The FCCSEA records support this testimony. Further, the FCCSEA records established that plaintiff's spousal support arrearages totaled $22,704.80 as of May 15, 2006. Neither plaintiff's post-retirement income decline nor his filing of a motion to reduce spousal support excuse his disregard of the court's order. Id., citingBrockmeier v. Brockmeier (1993), 91 Ohio App.3d 689, 694. Accordingly, the trial court did not abuse its discretion by finding plaintiff in contempt.[2] The second assignment of error is not well-taken. *Page 19 
 {¶ 52} Plaintiff's third assignment of error asserts the trial court erred in awarding defendant $500 in attorney fees. Plaintiff contends the court's award was motivated by its bias toward him. We disagree.
 {¶ 53} R.C. 3105.18(G) mandates that a trial court assess attorney fees against a party who is found to be in contempt of that court's order regarding spousal support. Wilder v. Wilder (Apr. 13, 1993), Franklin App. No. 92AP-1566. That statute provides, in relevant part, that:
 If any person required to pay * * * spousal support * * * is found in contempt of court for failure to make alimony or spousal support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and shall require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt.
 {¶ 54} An attorney fee award will not be disturbed absent an abuse of discretion. Id., citing Birath v. Birath (1988), 53 Ohio App.3d 31. In this case, defendant testified that she paid her attorney $500 to prosecute her contempt motion. The trial court found the amount of the fee to be reasonable and related to the contempt motion. There is no evidence of bias in the record. The trial court did not abuse its discretion in awarding attorney fees or in the amount of the award.[3]
The third assignment of error is not well-taken. *Page 20 
 {¶ 55} For the foregoing reasons, we sustain plaintiff's first assignment of error and overrule plaintiff's second and third assignments of error. Accordingly, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand this cause for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
 TYACK, J., concurs SADLER, J., concurs in part and dissents in part.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] "A QDRO is a current distribution of the rights in a retirement account that is payable in the future, when the payee retires. It is ordinarily issued subsequent to and separate from the decree of divorce itself, after the employer payor has approved its terms as conforming with the particular pension plan involved. A QDRO is, therefore, merely an order in aid of execution on the property division ordered in the divorce decree." McKinney v. McKinney (2001), 142 Ohio App.3d 604,608.
[2] We note, however, that the finding of contempt may be affected if, upon remand, the trial court enters an order of modification and makes a discretionary decision to make such order retroactive to the date plaintiff filed his motion for modification.
[3] The trial court's judgment entry states that "[o]n February 6, 2006, Defendant filed a Motion for Attorney Fees" and purports to award her attorney fees for the contempt action pursuant to that motion. In fact, defendant's December 27, 2005 show cause motion requested attorney fees incurred in prosecuting the contempt; the February 6, 2006 motion requested attorney fees incurred in responding to plaintiff's motion to modify spousal support. As noted, the trial court awarded defendant attorney fees based upon evidence that her attorney charged her $500 for prosecuting the contempt. Accordingly, the trial court's award of attorney fees was, in fact, made pursuant to defendant's December 27, 2005 motion, not the February 6, 2006 motion. The trial court failed to rule on defendant's February 6, 2006 motion for attorney fees incurred in responding to plaintiff's motion to modify spousal support; thus, we must presume the trial court overruled that motion. Columbus Mtg., Inc.v. Morton, Franklin App. No. 06AP-723, 2007-Ohio-3057, at ¶ 66, citingSeff v. Davis, Franklin App. No. 03AP-159, 2003-Ohio-7029, at ¶ 16.